**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 06:42 PM September 29, 2020**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| RAJINDER S. MALHI AND | ) | CASE NO. 20-40762 |
| PRATIPAL K. MALHI, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

    Now before the court is creditor Brinda Rama's ("Rama") motion to vacate Debtors' voluntary dismissal. Debtors oppose reinstatement of their case. Both the United States Trustee ("UST") and the chapter 13 trustee ("Trustee") filed briefs in support of reinstatement and conversion to chapter 7.

    The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference issued by the United States District Court for the Northern District of Ohio. General Order 2012-7. The court has authority to enter final orders in this matter. Pursuant to 28 U.S.C. § 1409, venue in this court is proper.

    This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

## BACKGROUND

Rama challenges Debtors' good faith in filing, and subsequently dismissing, their chapter 13 case. She seeks to have the case reinstated to continue conducting discovery into Debtors' financial affairs. Alternatively, she seeks reinstatement and conversion of the case to chapter 7.

In 2015, Rama leased a New York City apartment to Debtor Pratipal K. Malhi and her son. The joint debtor and main income earner, Rajinder S. Malhi, was not a party to the lease. Following a breach of the lease, Rama sued the pair in New York state court, obtaining a judgment of just under $130,000 in October 2018.

Debtors filed a chapter 13 case on May 1, 2020. They listed Rama as an unsecured creditor of Debtor Pratipal Malhi. The debt of $128,998.64 is listed as disputed with the notation "Deficiency (default) judgment from Supreme Court of New York co signed apartment in New York City." On June 6, 2020, Rama filed an unsecured proof of claim for approximately $147,000.

Several days later, Rama began filing motions for 2004 examinations and requests for production of documents from various banks and financial institutions. She contends that Debtors filed this case in bad faith and with the intent to frustrate the collection efforts of creditors. She points to the vastly differing figures between a 2015 financial statement provided in connection with the New York City lease, identifying approximately $3,000,000 in assets, and the assets disclosed in Debtors' bankruptcy schedules, totaling $252,525. She also cites a questionable transfer and re-transfer of Debtors' real estate, non-cooperation in this court and state court, and Debtors' failure to appear for the 341 meeting.

Less than a week after Rama's filings, on June 19, 2020, Debtors filed a notice of voluntary dismissal and the court summarily entered a dismissal order. The next day, Rama filed a motion to vacate the dismissal order. Rama subsequently filed a motion to convert the case to chapter 7, which the court denied because the case was dismissed.

In support of their dismissal, Debtors counter the allegations of bad faith with two main arguments. One, they allege they were surprised by an IRS lien, creating significant secured debt they classified as unsecured in their chapter 13 case. Two, Debtor-husband was unemployed but obtained postpetition employment in Pennsylvania, resulting in Debtors' desire to address their debt outside of bankruptcy.

The court held a hearing on the motion to vacate on July 16, 2020, attended by Scott Belhorn from the Office of the United States Trustee; Jody Oster, counsel for Rama; Michael Gallo, chapter 13 trustee; and Richard Hoppel, Debtors' attorney. Post-hearing, all four parties submitted a supplement brief.

# DISCUSSION

The court must determine whether Debtors had the right to voluntarily dismiss their case and whether the proper procedural dismissal mechanism was utilized. These questions involve interpretation and application of 11 U.S.C. § 1307(b) and Bankruptcy Rule 1017. Per the former,

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1307(b). Because of the use of the word "shall" in this provision, Debtors contend they have an absolute right to dismiss a chapter 13 case. In re Mills, 539 B.R. 879 (Bankr. D. Kan. 2015); In re Fisher, 2015 WL 1263354 (Bankr. W.D. Va. 2015). This court is not of the same opinion, having previously determined

> [t]here must be a check against providing a debtor an unhampered right to file a case, obtain the benefit of the stay, and then dismiss when opportune, especially when a pattern is apparent. The need to maintain the integrity of the bankruptcy system and prevent abuse outweighs a debtor's absolute right to dismiss.

In re Smith, 2019 WL 2406940, *4 (Bankr. N.D. Ohio 2019). This conclusion was affirmed by the District Court for the Northern District of Ohio:

> Smith contends that the bankruptcy court erred when it reinstated his bankruptcy after he voluntarily dismissed it. He maintains that he has an absolute right to dismissal despite any alleged abuse.[4] The circuit courts addressing this issue have held that there is a bad faith exception to a debtor's voluntary dismissal under § 1307(b). *See In re Jacobsen*, 609 F.3d 647, 660 (5th Cir. 2010); *In re Rosson,* 545 F.3d 764, 772 (9th Cir. 2008). Since the Supreme Court decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), no other circuit court has held otherwise. Based on the record presented and "[i]n the absence of controlling authority in [the Sixth Circuit] ... this court will follow *Jacobsen* and *Rosson* and determine that debtors do not have an absolute right to right to dismiss their case in the face of allegations that they have acted in bad faith or abused the bankruptcy process." *In re Cyncynatus*, 2013 WL 3864310, at *2 (Bankr. N.D. Ohio July 24, 2013).
>
> Moreover, the Bankruptcy Appellate Panel of the Sixth Circuit and district courts within the Sixth Circuit have held that there are limits

3

on a debtor's power to voluntarily dismiss his case. *See In re Cusano,* 431 B.R. 726 (B.A.P. 6th Cir. 2010) (finding that a bankruptcy court could place limits on debtors even after filing a voluntary dismissal under § 1307(b)); *see also In re Haddad*, 572 B.R. 661, 673 (Bankr. E.D. Mich. 2017) ("The Court does not hold that there is no conduct that would ever support the Court recognizing an exception to a debtor's right to dismissal under § 1307(b) ...."); *In re Cyncynatus,* 2013 WL 3864310, at *2; In re McCraney, 172 B.R. 868 (N.D. Ohio 1993).

Smith v. U.S. Bank, N.A., 2020 WL 608638, *2 (N.D. Ohio 2020). This court maintains its position that a debtor's right is not absolute when bad faith or abuse is demonstrated. The court will therefore consider whether the facts of this case support a limitation of Debtors' right to dismiss. Rama argues Federal Civil Rule 60(b)(3), (4) and (5),[1] incorporated into bankruptcy practice through Bankruptcy Rule 9024, support relief from the dismissal order.

## I. Rule 60(b)(3)

Under Rule 60(b)(3), the court can set aside the dismissal order for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Rama bears the burden of proof by clear and convincing evidence. Jordan v. Paccar, Inc., 97 F.3d 1452, 1996 WL 528950, *7 (6th Cir. 1996) (unpublished). Rama does not discuss fraud or misrepresentation but focuses on misconduct amounting to bad faith. Specifically, she posits that Debtor Pratipal Malhi engaged in conduct purposely designed to thwart collection efforts by creditors. She references the failure to produce documents and appear for a debtor's examination in state court, the transfer and re-transfer of real estate between Debtors and their daughter for no consideration, and the failure to appear at the 341 meeting of creditors.

The court is sympathetic to Rama and the appearance she is forced to play a rigged carnival game. Unfortunately, the court is not convinced that the alleged misconduct was sufficient to warrant relief from dismissal. Id. Rule 60(b)(3) allows for relief from a judgment when that judgment was obtained through conduct that impaired a party's ability to fairly prosecute or defend its case. Id. (referencing actions that prevent "full and fair presentation" of a case or that "substantially interfere" in the case) (citations omitted). Although Rama has expended funds for the legal work in this case, the misconduct has not unduly prejudiced her legal rights. Dismissal leaves her claim intact and she may pursue her judgment in state court. Thus, the court concludes Rama failed to meet her burden of proof under Rule 60(b)(3).

Moreover, this case simply does not have the same indicia of bad faith as many of its predecessors. The court looks at the totality of the circumstances to determine whether a case was filed in bad faith, reviewing factors like the nature of the debt, whether it is dischargeable,

---

1 At one point, Rama cites 60(b)(3), (4) and (6). More frequently, she cites (3), (4) and (5). Rule 60(b)(6) provides for relief only when another provision of 60(b) does not apply. Mallory v. Eyrich, 922 F.2d 1273, 1280 (6th Cir. 1991) (citations omitted). Since Rama cited three other 60(b) provisions as bases for relief, and has not specified independent grounds for relief under (b)(6), the court will not consider relief under 60(b)(6).

the timing of the filing, how the debt accumulated, how debtor has interacted with creditors pre- and post-filing, the debtor's income and expenses, and the debtor's motivation and sincerity in filing. Cyncynatus, 2013 WL 3864310, *5-6 (citations omitted). Although the court finds suggestions of bad faith, it is not convinced that bad faith permeates this filing and any misconduct warrants vacation of Debtors' voluntary dismissal.

Without question, Rama's concerns about the evaporation of over $2,000,000 in assets between 2015 and the 2020 bankruptcy filing are noteworthy. Creditors are entitled to a full explanation of the dissipation. The court is not persuaded that this reckoning must happen in the bankruptcy court. Looking at the totality of the circumstances, the court finds that there are just enough facts in Debtors' favor to avoid a bad faith finding.

Rama repeatedly references Debtor-wife's noncooperation in state court and the court accepts that Debtor did stall. However, the delay is not unassailable. Only five months passed between Rama's registration of the judgment and the state court's order to compel in April 2020. The Statement of Financial Affairs indicates Debtors were in discussion with Mr. Hoppel about bankruptcy as of March 30, 2020 and that they did have some communication with Rama during the state court proceedings. The bankruptcy case was filed just over two months after the state court set the first debtor's exam.

Other factors also tend against vacating the dismissal. Debtors are not repeat filers, a notable fact in some bad faith discussions. In re Narod, 138 B.R. 478 (E.D. Pa. 1992); In re Chabot, 411 B.R. 685 (Bank. D. Mont. 2009); In re Price, 304 B.R. 769 (Bankr. N.D. Ohio 2004). They filed a complete petition and schedules and a chapter 13 plan. They started making payments to the chapter 13 trustee. Counsel accepted responsibility for the 341 meeting issues. While the real estate transfer smells foul, it is known, not concealed. The original transfer to Debtors' daughter occurred in 2017, well before this filing. With the re-transfer, the asset was returned to Debtors.

Debtors have presented two plausible explanations for dismissal, including Debtor-husband's new employment and the surprise of a secured IRS claim.[2] Debtors did not dismiss in the face of a motion to convert, or similar action, by a creditor.

Finally, in a little-addressed consideration, Rama's allegations do not apply to both Debtors, only Debtor-wife. This has garnered little discussion but is material to the court. While the court understands that it is a joint case and Debtors are married, Rama is a creditor of only Debtor Pratipal Malhi. Ninety percent (90%) of the income in this case is from Debtor-husband. Vacating the dismissal holds him hostage. Moreover, he was unemployed at the time of filing and his reemployment is an obvious factor that militates against allegations that dismissal was in bad faith.

---

2 Debtors proposed to pay thirteen percent (13%) to unsecured creditors, including the IRS claim scheduled at $166,000+. Their plan payment was $1,500 per month. Debtors estimate payments of $7,550 are necessary to pay the secured IRS claim. At filing, their combined monthly income was $6,850, leaving confirmation of a plan unlikely on these figures.

The court cannot say with conviction that by filing this case, Debtors abused the system. Debtors have presented plausible credible grounds for seeking dismissal. Looking at the totality of the circumstances, the court cannot find that any misconduct by Debtor Pratipal Malhi was abundantly prejudicial to warrant vacating the dismissal order.

## II.     Rule 60(b)(4)

Turning to Rule 60(b)(4), Rama claims the judgment is void because Debtors obtained dismissal by notice, not by motion.   The court finds this argument elevates form over substance and is not well-taken.

Section 1307(b) of the bankruptcy code states that a debtor may "request" dismissal. Use of this word is intentional because other dismissal provisions, such as 11 U.S.C. § 707(b)(1), employ the word "motion."   "In construing statutes, it is the duty of the courts to give effect to the words used, not to delete words used, or to insert words not used." In re Wengerd, 453 B.R. 243, 251 (6th Cir. 2011) (citations omitted).   Congress knew how to use the word "motion."

Under 28 U.S.C. § 2075, the Supreme Court is granted authority to enact rules and establish procedures under Title 11. "Such rules shall not abridge, enlarge, or modify any substantive right."   28 U.S.C. § 2075.   Unlike the drafters of the Bankruptcy Code, the Supreme Court employed the term "motion" in Bankruptcy Rule 1017(f)(2), requiring "conversion or dismissal under §§ 706(a), 1112(a), 1208(b), or 1307(b) shall be on motion filed and served as required by Rule 9013."   For the purposes of this opinion, the court will presume that a motion was the proper procedural mechanism, not the notice employed by Debtors.   The question then becomes whether filing a Notice of Voluntary Dismissal, rather than a "Motion to Voluntarily Dismiss," prejudiced other parties.

Bankruptcy Rule 9013 governs the form and service of motions. It states that the moving party shall serve the motion "on (a) the trustee or debtor in possession and on those entities specified by these rules; or (b) the entities the court directs if these rules do not require service or specify the entities to be served."   In this case, the Notice of Voluntary Dismissal was served on the trustee and therefore complied with Rule 9013 in all but the title of the pleading.   Unlike other dismissal provisions, no other parties are identified for service, nor is notice required to be provided to any parties in interest.   All that is required is service to the trustee.

Many other dismissal provisions do require notice and/or service but § 1307(b) is generally excepted.   For example, Rule 1017(a) requires the provision of notice in accordance with Rule 2002 which requires twenty-one day notice of the hearing for certain dismissal actions. Similarly, Rule 1017(f)(1) states that Rule 9014 governs dismissal or conversion. Again, both provisions except a debtor's "request" for dismissal under § 1307(b).

6

Notably, the provisions mentioned in Rule 1017(f)(2) focus on actions that a debtor may take as a matter of right to change the course of a case, including the right to convert or dismiss. Both the Code and Rules have different provisions governing conversion or dismissal of cases by parties in interest. Debtors have slightly more leeway to act unilaterally. Thus, the service and notice requirements are lessened.

While Debtors may not have filed a pleading titled "motion," they did appropriately file and serve the Notice of Voluntary Dismissal. The court finds the order granting the dismissal is not subject to vacation because it is void.

### III.   Rule 60(b)(5)

Under the fifth prong of Rule 60(b), the court can grant relief from the dismissal order because "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Rama does develop any specific argument under Rule 60(b)(5). This failure is grounds to deny relief. To the extent Rama argues that it is not equitable to enforce the dismissal order, the court disagrees.

In an opinion dated June 23, 2020, the court highlighted reasons that vacating the dismissal order is inequitable to Debtors:

> "Chapter 13 is intended to be entirely voluntary" to avoid involuntary servitude concerns.   In re Fluharty, 23 B.R. 426, 428 (Bankr. N.D. Ohio 1982) (citing H.R.No.95-595, 95th Cong., 1st Sess. at 120 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787).   The voluntary nature of chapter 13 also recognizes "the difficulty of forcing an unwilling debtor to comply with a repayment plan."   Jacobsen v. Moser (In re Jacobsen), 609 F.3d 647, 659 (5th Cir. 2010) (citing In re Armstrong, 408 B.R. 559, 570 (Bankr. E.D.N.Y. 2009)).

(Memo. of Op.., ECF No. 52, p. 2). When Rama filed the motion to vacate, she requested reinstatement to continue prosecution of her pending 2004 exam motions. The court cannot force Debtors to remain in a chapter 13 case. Although Trustee, UST and Rama support reinstatement and conversion to chapter 7, none of the parties had filed a motion to convert prior to dismissal. Debtors exercised their right to voluntary dismissal. Allowing the dismissal to stand does not impair any rights of a creditor to pursue collection outside of bankruptcy court.

### **CONCLUSION**

Ultimately, this motion is not determined by the specifics of words in the Rules, but rather by the facts of the case. Although some conduct is questionable, there are indisputable facts, such as the employment of debtor-husband, that militate against the rare action of

overriding Debtors' choice to dismiss a chapter 13. Upon full consideration of the totality of the circumstances, the court denies the motion to vacate the dismissal order. An order will be issued immediately.

#   #   #

**Service List:**

Richard V. Hoppel
Richard V. Hoppel Co., L.P.A.
16688 Saint Clair Avenue
East Liverpool, OH 43920

Michael A. Gallo
5048 Belmont Avenue
Youngstown, OH 44505

Jody M. Oster
1391 W. Fifth Avenue
Suite 433
Columbus, Ohio 43212